Alright, welcome to the Barrett Street version of the East Courtroom at the John Lionel Wisdom Court building. Judge Wiener and Judge Engelhardt and I are delighted to be at Tulane to have this session of oral argument. This is day three for the panel. We have three cases that are to be argued this morning. Counsel are all very skilled and familiar with our lighting system and the sound sounds good so as long as you keep your voices up we're good. We do record the sessions for purposes of listening to the oral argument and opinion writing. Having said that we'll call the first case 22-50196 Johnson v. City of San Antonio et al. May it please the court. My name is Attorney Artessa House. I represent Appellant April Johnson on behalf of her child Amani Roberts who was a minor child at the time of the incident. The lower court erred when it granted the City of San Antonio's summary judgment when the evidence in the court records show there is a genuine issue of material fact as it relates to the City of San Antonio's policy either by actual written policy or an unofficial custom or practice exercised repeatedly that was the driving force of the appellant's constitutional injuries. The lower court also erred when it granted the City of San Antonio's summary judgment when the evidence in the court records shows that a genuine issue of material fact existed concerning the City of San Antonio's negligent hiring and retention of Officer Gary Tuley. It is irrefutable that a lower court erred when it concluded that the City of San Antonio is not liable for the negligent hiring and retention of Officer Tuley particularly when the City of San Antonio and the San Antonio Police Department records show substantial and repeated use of excessive force by Officer Gary Tuley on citizens of San Antonio. At all times pertinent, Gary Tuley was acting under the color of law when deprived citizens of their rights that are secured under the Fourth and Fourteenth Amendment to the United States Constitution and as the rights that are protected to pursuant to 42 U.S.C. 1983 all of which are clearly established federal laws. As to Officer Tuley and Officer Osorio, while the lower courts properly denied Officer Tuley and Officer Osorio's motions for summary judgment, appellants believe that the lower courts erred when it dismissed on summary judgment motion based on appellant's Texas Tort Claims Act action against Officer Tuley and Officer Osorio when the evidence in court's own records show that both Officer Tuley and Osorio were not entitled to qualify immunity. When it comes to the City of San Antonio and their error in granting summary judgment in favor of the City of San Antonio, thereby terminating their participation in this case, when the evidence in lower courts' records shows that there is a genuine issue of material fact concerning the City of San Antonio's unconstitutional policy either by, number one, actual written policy or, two, an unofficial custom or practice exercised repeatedly, which was the driving force of appellant's constitutional injuries. The court reviews a district court's grant of summary judgment de novo and applies the same standard as a district court, that's Ferraro v. Liberty Mutual Fire Insurance Co. And in doing so, the court reviews all facts and evidence in light of the most favorable to the non-moving party. Summary judgment is proper when there is no genuine dispute as to a material fact and movement is entitled to judgment as a matter of law. Let me start with you, counsel. With this one, it's very fact-intensive, to put it mildly. You had an assortment of claims, both as to the City and as to the officers. Some the district court left in and some did not. So, zone in, if you will, as to the officers, why you found that the district court erred. There is dash cam and so forth in this and, you know, we've looked at that already. So, just know that we've looked at it to whatever extent it's helpful. So, help us understand, you know, better the argument you make. Yes, Judge. As it relates to Officer Tooley and Officer Osorio, they're not shielded under the Texas Tort Claims Act because, as you saw in the dash cam video, almost all of the vehicles driven by SAPD officers hold out and represent to the public that they are there to, number one, protect and, number two, serve. They did not do that on that day when it came to April Johnson and also her 14-year-old minor child, Amani Roberts. Counselor, both of those plaintiffs in this case, there was some question. I understood that only Roberts is the plaintiff? Right now, yes. So, at the time when this was filed, Amani Roberts was 14 years old. She was a minor. And while, with gross indifference, the appellees would like for you to believe that she held herself out to be an adult, that was not the case. She was a 14-year-old minor accompanied at a quinceañera by her mother. So, at the time that this was filed, when she was punched by Gary Tooley at this quinceañera without probable cause, she was a minor. At this point, though, Judge, she stands as an adult. And about how many people are at this party at the time the officers arrived? Oh, there are several, Judge. Not only are there several people, when the officers arrived, they arrived to... You say, like, between 50 and 60? Was there something in the brief, I thought? That's approximately right. 50 to 60, but we're talking about dozens of officers that were called to an incident not related to my client, Amani Roberts, that were related to two adult males that were involved in a very serious and dangerous assault with a dangerous instrumentality. So, at that point, several officers were on the scene called that were capable of directing the crowd to go either way and also restraining individuals, if that's so required, without the use of excessive force. Yes, Judge. And so, they were in, to answer, to go back to answering the question, they were in breach of a standard to protect and serve. They have a responsibility and right to arrest those. They have probable cause to commit a crime. But in this case, there was no crime that was committed. And I'd like to bring up, and I know you've reviewed the information, there was an arrest made that night. The instrumentality that was used in this particular case, we're talking about the police cars used to transport in direct violation of my client's constitutional right of liberty. We are talking about the handcuffs that were used in order to detain my client. And so, but for being in breach of their duty to protect and serve, they are not shielded by the Texas Tort Claim Act. There was a reasonable standard of care expected of a reasonable officer under these circumstances, and that is not what Tooley did, that is not what Osari offered to this child. They are law enforcement. They put her in a car without probable cause. They put her in handcuffs without probable cause. And those were the instrumentalities that were used. A piece of equipment that they used, provided and sanctioned by the city of San Antonio. Counsel, let me ask you, on the video, and as Judge Stewart indicated, there are multiple videos, dash cam as well as body cameras, I believe. Does it make a difference? It seemed like the district court, in its opinion, references whether or not a punch was landed or not landed, and who punched first. Does it make a difference in terms of a battery versus an assault by your client? No, Judge, because in this particular case, they would merge. I believe, even then, let's say, because my client irrefutably states in the affidavit and also in deposition testimony, that she did not punch Officer Tooley. What you will see on that body cam is increasing violence made by Officer Tooley and inconsistent statements, for which he choke holds her mother at one particular point before making contact with my client. He then is aggressive towards my client's brother, who is on the floor, is talking to him very ugly. And then my client proceeds to go to Officer Tooley and state, after she hears Officer Tooley, tell her mother, you better be quiet or you're next. She goes and tells him, you better not talk to my mama that way. For which he proceeds to hold his hand out, choke her in her neck, and take his fist back and start wailing in on her, while she is in the immediate vicinity and area of, she's surrounded by officers. Officer Osorio was right there, which he claims that she saw my client punch him. Later on, it's caught in video cameras saying, hey, did she punch you? There's so many inconsistencies with what these officers are witnessing. But what is consistent is what was caught on those body cameras. My client does not touch her, even if she did. The question is whether or not there were enough officers there to restrain a 14-year-old girl who was wearing a halter top dress, has items in one hand and another hand that's available. So the use of force was not reasonable in this case. And I will say, the city of San Antonio, they conducted their own internal investigation when it came to this case. In internal affairs involving the incident, they found that Tooley was not truthful. When he said that my client called him a white motherfucker before striking him, and it was not reasonable nor necessary to achieve a lawful police objective to strike her. But after they do this investigation, they said that excessive force was inconclusive. And the allegation of lack of truthfulness was unfounded by the SAB Complaint and Administrative Review Board. But as you are aware, so that night, my client was arrested. She was taken to jail as a juvenile. But when the district attorney's office saw the facts and information of this case and the body camera that was available to you all, they dropped the charges against my 14-year-old client, marshaled the evidence in front of a grand jury, and there was a grand jury indictment of Gary Tooley. Is all that in the record? Sir? Is all that in the record? Yes, sir, it is. So we argue the grand jury indictment, Texas Penal Code section 39.03, he was charged with official oppression under the Texas Penal Code in order to be charged with official oppression. A public servant under the color of his office of employment commits an offense if he intentionally subjects to mistreatment or to arrest detention. And was he convicted? He was not. So let me explain what happened. Well, an indictment, as we know, is an accusation, a charge brought forth from a grand jury. So I think there's a difference, I hope you agree, there's a difference between someone being charged with a crime and someone being convicted of a crime. Judge, I do respect that there is a difference. He was indicted under D.A. Nicholas LaHood. During that time, there was a transition after the indictment to a new D.A. that took over that office. And at that time, those charges were dismissed. Is that in the record? That is not. That part is not. No, it isn't. Coming back to your argument about the city, what's the best case that helps you in terms of your argument about the city's policy? Sure. It's irrefutable that the City of San Antonio's customs and practices ratify... No, no, no, no, no, my question is what's your best case or cases, not the facts. This is a super fact-intensive case. We know, we've looked at it. The videos are not as clear. I must have looked at it ten times. It's slow, fast, and it's not clear and irrefutable what's going on in there. But that having been said, you've got an argument about the city and their policy. So help us understand what's the best case or cases that get you where you want to be. Okay. I point to your Rizzo v. Goode in 1976 and also Iqbal v. Hastie. And we talk about a supervisory link, okay, where an official may be liable when not directly involved in the constitutional violation, which is what they are going to claim. The misconduct of the support must be affirmatively linked to the action or inaction of the supervisor. However, in Rizzo v. Goode and Iqbal v. Hastie, the personal involvement of a supervisor may be established by showing that he directly participated in the violation and failed to remedy the violation after being informed of it by report or appeal. Number three, created a policy or custom under which the violation occurred and was grossly negligent in supervising subordinates who committed the violation or was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were violated. Under Monell as well, there was a ratification and custom of policies. Gary Tooley has a history of doing these things that only escalated over time. In fact, the day that this incident occurred was his first day back from being suspended after he had already punched a grown man to being unconscious. He came his first day back from suspension, employed by the city of San Antonio, sanctioned by their ratification of customs and policies, allowed him to punch a 14-year-old child. As it stands today, he would stand trial if the court agrees with me, as still employed as a city of San Antonio officer. And it's the gross indifference of the policies and customs that are in violation of my client's Fourth and Fourteenth Amendment. And under due process, she's entitled to more than that. Judge, I hope that answers your question. Okay. On the 25th, let me just ask you quick and answer this real succinctly. Okay, just in the factual scenario, what we see in the tape is this melee out in the parking lot, et cetera. This was a, when is Sarah? Anyway, it's a birthday party for the 15th birthday of somebody, right? So, to understand, was there already a fight going on outside with other people when the mother and your client come out, or is the fight going on and your clients are alleged to have been participants in the fight itself? I will succinctly answer, Judge. While Officer Tooley would state that my client was a perpetrator of a fight going on, he, after he reviewed deposition, the tapes as you did, he stated that she was not. When, by the time my client and my client and her mom came out, there was a victim on the floor. You will see them approaching. That fight had already ceased. Okay. You just keep there being perfect. I just wanted to be at least clearer than I was. We appreciate you. Reserve your rebuttal time for five minutes to come back up. I have. Thank you. All right. We'll hear from the city. Mr. Fitzpatrick. May it please the court. My name is Sean Fitzpatrick. I represent the city of San Antonio. The only orders that are properly before this court are the orders denying Officer Tooley's qualified immunity-based motion for summary judgment and partially denying Officer Osorio's immunity-based motion as well. The remaining claims that are, that have been briefed by the parties in this case are not properly before the court. The court doesn't have jurisdiction to hear them. And that would be the grant of summary judgment for the city of San Antonio and for Officer Gross and the partial summary judgment granted in favor of Officer Osorio. So, the, the very first, the invocation of appellate jurisdiction happened when Appellant Roberts filed a notice of appeal in the in the district court. And it identified specifically what she was appealing. And what it identified was the summary judgment that was granted against the city of San Antonio and nothing else. So, that framed the issues for appeal. But it, it omitted the other, the summary judgments in favor of Gross and the partial summary judgment in favor of Osorio. And she identified section 1292. And there's two possibilities that that could have fallen under. One would be 1292B, which allows the immediate appeal of a controlling, a disputed controlling issue of law if, if so certified by the, by the district court. We didn't have anything like that in this particular case. 1292E, however, enabled Rule 54B, which allows the district court to certify an appeal if it expressly determines that there's no just reason for delay of the appeal. We addressed that, the city addressed that in its briefing. And in response, the plaintiff, I'm sorry, Ms. Roberts invoked the collateral order doctrine. Madam Clerk, give Mr. Fitzpatrick two minutes. He's trying to talk as fast as he can. Give him two minutes additional so you can go ahead and finish. I appreciate it. I wanted to address the collateral order doctrine here before you because I didn't have a chance to respond to that since it was first brought up in the reply brief to the city's argument. So, Roberts is correct that the collateral order doctrine allows the immediate interlocutory appeal of a disputed question, but only if it's completely separate from the merits of the case and only if it cannot be effectively reviewed on appeal from a final judgment. And that is precisely why the qualified immunity appeals that have been brought by Officers Tooley and Osorio are properly before the court and within its jurisdiction because they're not reviewable on appeal of a final judgment. If those officers have to go to trial after asserting immunity, then an appeal from the final judgment defeats the whole purpose of the immunity doctrine in the first place. It's supposed to protect them from trial. They need that determination before we ever get to trial. That's where the collateral order doctrine is appropriately applied, not to an appeal of a merits-based summary judgment like that which was entered in favor of the city of San Antonio. I believe the case of McKee versus Rockwall is directly on point there where this court determined there was no jurisdiction to hear an appeal of a summary judgment that was granted in favor of a municipality even though the municipality's officers were properly before the court on the issue of qualified immunity. Thank you. All right, thank you, sir. All right, we hear from Officer Tooley, Mr. Frigerio. May it please the court, counsel, law students of Tulane University. My name is Charles Frigerio and I represent San Antonio Police Officer Gary Tooley. This is his inter- As a cross-appellant, we are appealing the denial of qualified immunity one, as to the excessive force allegation and two, as to the false arrest allegation. Let me start off by talking about the facts. The quinceanera, which in Spanish heritage is the 15-year-old birthday party coming out into adulthood. And this party, which should have been just a celebration, unfortunately, turned into a very volatile and violent affair when one of the participants, Mr. Wozniak, I believe was in the briefing, was supposedly flirting with another someone else in there and then the ex-husband became enraged and two men fought outside and he was bludgeoned and was laying on the pavement bleeding, which is why EMS was called in the first place and why the officers arrived. And so we have that violent incident occurring. The establishment decides to close down the quinceanera and people are then leaving the quinceanera and there was a confrontation between some of the participants, meaning the appellant in this particular case and her mother, disrespectful, being disrespectful allegedly to another family  I believe the Johnson family was saying it's all over, you need to leave. They didn't like the way it was said. That individual called her parents and other people started coming and unfortunately then we had fights breaking out all over this parking lot. And yes, in the record we're speaking of 50 to 60 people and it's in the record on appeal at 1302 that we have those 50 to 60 people with different fights in various areas and we have 8 to 9 video that we see as part of this case you think there's about 8 to 9 officers present? Yes, your honor. And what's important and I'll get to that I'll specifically talk about the video clips but I'd like to go because I believe it's important when we're talking about active resistance what was occurring in the parking lot. So when these fights are breaking out the EMS is transporting Mr. Wozniak and my client is attempting to quell the situation with Ms. Johnson, the mother who's going after the other participants who have come in who felt their daughter was disrespected. He actually is able to calm her down to a certain degree but her children which is now the plaintiff in this case Amine Roberts and her brother unfortunately are going forth in pattern after their parents they're fighting individuals. And so we have someone and it's in the tape screaming on the tape she's got a weapon. That's at record on appeal 1304. Roberts' brother then threatens to kill my client Officer Tooley and that's on the record at 1319. So this is obviously a very volatile situation. Amine Roberts then and this is where the tape which is actually the fourth tape comes into play because she is very upset and you can see in the fourth tape it starts at 24 24 minutes and 20 seconds which is the fourth clip. On the fourth clip her male friends are attempting to restrain her and you can tell that she is charging ahead even though they're trying to hold on to her. Trying to get at these other individuals who she's upset with. All of this when it starts at 24 20 now we're dealing with a three minute time frame. And in that three minute time frame are the clips that we have submitted in the record. The second one being when Roberts goes after Officer Osorio and that's at 26 0 7 which is tape number 2. That's vitally important to this because that's within one minute you'll see the tape where she actually makes contact she lifts up her blouse and makes contact with the female officer, Officer Osorio. Well I looked at it ten times I can't see. I know you're arguing that but it's sure not that clear. It's clear about her movement but whether or not this contact made it's really hard. I looked at it in slow motion you know fast but I get your argument but I guess the point was does it matter from your standpoint whether actual contact was made or not. Back to the kind of questions that they ought to ask. Yes it would not matter because it's still an attempted assault and you can see the uppercut. Let me ask you a hypothetical question. If it there has been no crowd it was just this one plaintiff complaining about the officer your client would it have been reasonable for your client to have used force on Roberts or is it only because as you described it all of this was going on. I think you have to take into consideration what was occurring in the melee and that was important. My client still testified that he was struck by Amine Roberts and if you strike an officer then I think you can still have a compliance strike and he would still be entitled to a compliance strike because of that. But in this particular case because what we do see on the film of all four clips we see a very volatile situation and someone who is very upset and who has attacked Osoria and then within less than a minute goes after my client Officer Tuley and then Officer Tuley delivers a compliance strike and then it still takes Officer Tuley to Osoria and grows three officers to be able to control her and place her in the patrol car. I still have trouble getting my head around she's 14 years old. Well, Your Honor, she was granted she was 5'3", but she was acting like unfortunately she was patting herself after her parent. She was upset. She's 14 and it's hard for me to get past her and I see on the tape it looks like a choke hold she's put down etc. I get it, but when I'm looking at it I'm like she's 14. So I'm like okay. I'm saying how did the case go? I'm just saying you forced me to look at it and I look at it. So I'm just saying she's 14. She's 14. She's not 8'9", 250 pounds. She's 14. She's got a party dress on. She's out there. It's clearly out of control. Don't get me wrong. It's just in looking at it, trying to discern. You said punch. The other side says well the officer shoves her down the choke hold etc. Taking it all out. We take the case as it's presented. I'm just saying you forced me to look at it. And the photograph of her in the brief was after she was arrested. It is what it is. She was not injured as a result of this  Although plaintiff has alleged that she had other injuries. If you look at, we have the record on appeal. I think she suffered a concussion or some other injuries. I think that's what the allegation is. That's the allegation, Your Honor, but the record on appeal shows at 1843, the date after when she was examined at the hospital, she had a hand contusion and muscle spasms. There was no evidence of a contusion subsequent to the incident when she was taken to the hospital. I would like to mention  defendant's mother was arrested and was arrested in our briefing. Craig v. Martin talks about the ascending actions of when an officer was called and dealing with 14 and 15 year olds. That's why I believe it's important in that case. Even though the complainant mother was the one who called, the children, the 14 and 15 years old and her son,    one who was the one who was arrested. The court reversed the denial of summary judgment on qualified immunity. In two cases which we cite that have been authored by Judge Englehart, was Tucker v. Shreveport which talks about a takedown on a DWI stop and while the officer was attempting to do the DWI procedure, the girlfriend kept interfering. He finally said, you know, I'm going to need to take your cell phone because I don't want you to lose it when you get arrested. She starts struggling and she's taken down. And that showed that again active resistance. I guess if there's one major point I'm making is that it was active resistance, Your Honor, and therefore I ask that the denial of qualified immunity to my client, Officer Gary Tooley, be reversed and he be granted  on both the excessive force and the false arrest. The material fact dispute was whether or not the judge at the trial court couldn't tell whether or not the strike landed on Officer Tooley. Our position is it doesn't matter that the punch was thrown. And so I assume you argued the alternative. You know, we say there was a strike that wasn't. Did he opine on whether it made a difference or was the trial judge's conclusion that there was a strike? He just concluded there's a material fact issue as to whether or not there was a strike. And with just one quick brief, the charges against my client were dismissed and that is part of the record is in his deposition. Thank you. All right. Appreciate your clarification. All right. We'll hear from counsel for Ms. Osorio. May it please the court. I'm Clarissa Rodriguez and I represent officers Osorio and Gross in this matter. I agree, Your Honor, that April Johnson is not a party to this case. We filed a motion to dismiss her from this appeal carried forward with the case so we agree that she is not part of this. The scene at the quinceanera obviously we know was tense and chaotic. Officers Osorio and Officer Gross were part of this. Officer Gross is also part of that motion to dismiss. It is not proper under the collateral order doctrine to appeal his granting of qualified immunity. In fact, similar to my colleague, it would defy the policy reasons behind qualified immunity if his appeal was allowed to go forward. Therefore, we respectfully request that you dismiss Officer Gross from this appeal based on the district court's granting of his qualified immunity.  Officer Osorio, Officer Osorio's situation is different than Officer Tooley. In this situation, her particular experiences and experiences are different than Officer Tooley's. And personal experiences and observations with Ms. Roberts are what's important to determine whether there was probable cause to assist in this arrest. The record is clear that she assisted with the arrest. She wasn't the one that put the hands behind the back of Ms. Roberts. And so that's why it's clear. There is a very important piece of video evidence in this record, Officer Cavasso's body cam. It was referenced earlier. But I'm going to tell you about it specifically. If you look at that video, it shows Ms. Roberts coming up, lifting up her dress, coming sort of very aggressively. My client, Officer Osorio, gets in front of her to stop her to do something. Instead, and she tells her to get back. And instead, Ms. Roberts throws her hands up. My client says, get back. She continues to throw her hands up, hits my client. If you look at the video, it certainly looks like she hit my client. And then she says, Ms. Roberts says, back off, back off. And then she also says, quote, don't fucking touch me, bitch, unquote. That's what she tells my client. And she hits my client. So it's reasonable for my client to believe that there was probable cause to assist in that arrest, based on her personal experience. What's important, Your Honor, Judge Wiener, is that you asked the question about whether or not if there was a bunch of people or not. Well, in this situation, even if in the case of Lofton v. City of Prentiss, Missouri, a 2022 case out of this court, this court specifically said, you must evaluate the actual events and historical facts leading up to the arrest to determine probable cause. My client had those personal experiences, the historical facts leading up to the assist with the arrest. And she said, that video testimony matches my client's deposition testimony. Okay? That is not part, that's part of the record. And so, based on the totality of the facts and circumstances, based on my client's experiences and her interactions with Ms. Roberts, she could have reasonably believed  probable cause to assist in that arrest. If I'm my client, and I had that personal experience, certainly I would think there was probable cause to assist in that arrest. Because, Officer Osorio said, she did view my client, she did view Officer Tooley in striking Officer, excuse me, Roberts, striking Officer Tooley. She said that. The District Court erred in limiting those facts. All they looked at was, all the    couldn't tell whether there was actual strike. From my client's perspective, which is important, the District Court looked at was one video where you couldn't tell whether there was actual strike. What's important in determining probable cause is the fact that she said, I experienced it, I saw it, not what Officer Tooley saw. Only Officer Tooley knows whether or not he got hit or not, right? My client doesn't know that, but she had personal experiences, and then Officer said that she knew exactly where she was. She said, I was looking to the right, I turned my head, my eyes were further than my head, I knew what happened. She observed fights before involving Ms. Roberts. Officer Hillman's cam, which is in the record, shows Ms. Roberts getting aggressive as well and being a little unruly, but my client specifically experienced Ms. Roberts hostile, aggressive, and behavior towards her. And so in that particular perspective from my client, not Officer Tooley, from Officer Resoria's perspective, she had probable cause to assist in the arrest. And it took her and two other officers to get Ms. Roberts under control. In addition to those perspectives that's required to be listened to and heard before the actual arrest, there were other observations in addition to her experience and then watching the strike of Officer Tooley. She also experienced arriving at the scene. She knew she was there for a particular assault in progress. She also experienced Ms. Roberts not listening to lawful orders, telling her to get back. That was in the record in my client's deposition. She assisted in the arrest, and afterwards she was uncooperative during the arrest. So there's four reasons about why my client had, it was reasonable for her to believe from her perspective that entitled her to qualified immunity. We also agree, Your Honor, that that way, based on the, excuse me, based on the totality of the facts and circumstances, her personal observations, experiences with Ms. Roberts, at the time of assisting with the arrest, it was objectively reasonable for my client to believe there was probable cause for participating in the arrest, and we request that you reverse and render the denial of her qualified immunity. As to the state law claims, very briefly, we believe that the District Court properly dismissed the intentional tort claims. There were false arrests, the only claims against my client were false arrests and false imprisonment. Under 1983, the false imprisonment claims are kind of rolled into the 1983 claims. However, under the Texas Tort Claims Act, there are also false imprisonment claims. There's intentional infliction of emotional distress, defamation. Those are barred under the Texas Tort Claims Act. There's no waiver of immunity. My client was sued in conjunction with the city, and they were properly dismissed by the District Court under Texas Tort Claims Act 101-106-F that entitles immediate dismissal of my client upon suing both the city and my client, and then also there is no waiver of immunity for intentional tort claims under Texas Tort Claims Act 101-057. Thank you, Your Honors. Thank you, Judge. Very quickly, in response to the Court of Appeals jurisdiction, and as we represented, the court has jurisdiction over this appeal pursuant to 28 U.S.C. 1292 because the judgment below is an interlocutory appealable judgment of the United States District Court, and the United States District Court grant of summary judgment in favor of the City of San Antonio and this is the District Court's desire to enter a final judgment in favor of the City of San Antonio, and thereby terminated the City of San Antonio's participation in the federal claims in this lawsuit. Furthermore, this dismissal, the District Court's dismissal of the Texas Tort Claims Act against the defendants is a genuine material issue remains to be litigated as to whether the State of Texas impart upon the defendant the right to use excessive force on a minor who pose no imminent threat of danger     genuine material issues remain to be litigated as to whether the State of Texas impart upon the defendant the right to use excessive force on a minor who pose no imminent threat to their    be litigated as to whether the State of Texas impart upon the defendant the right to violate clearly established federal laws and the right to violate the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution  supreme law of the land. Furthermore, the District Court's dismissal of the Texas Tort Claims Act against the City of San Antonio, Gary Tooley, Defendant in favor of all defendants. Why don't you, in the remaining time, try to tackle, you have four people got it. Sure. Tackle one at a time. Council Opposites like Tucker and Solis, you know, for the propositions of, you know, reversing the Qualified Immunity Denial based on active participation, et cetera. Any response to those? Sure. You know, as to the Qualified Immunity and especially when it comes to the Texas Tort Claims Act, we weren't just talking about the false arrests. We're not talking about the intentional torts of Officer Osorio or Officer Tooley. We're talking about their negligence, their breach of duty to protect and serve that resulted in instrumentalities used against my client. Not only that, my client was injured. She was not injured as a result of what they were like. Ms. Allison, I know  about your client. I know you want to give your jury argument. But if you don't get past these, you'll never get to give the jury argument. So, I'm not trying to give you an opportunity. You have these legal hurdles to get over. So, just try, if you can, to hone in on what we may be missing or what's different. I mean, you've got the briefs, but this is your shot to respond back at those particular points. Sure. Let's talk about why we're right about the Qualified Immunity. The policy issues because there's a reckless indifference to the plight of African-Americans, my client sustained injuries. We're also talking about Monell. When it comes to policies or customs that were adopted by the city of San Antonio, there is reckless indifference to the right of persons when it comes to this case. And there's racism embedded in those reckless indifferences. When you're choosing training through deliberate indifference to the right of the people, it is the   is this sort of right implicated by the task employees perform in usual and recurring situations. So, I'm not trying to give you an opportunity to give you an opportunity to look at the situations with which must be dealt. And if that training leads to employees violating the rights of people, that's Canton, Connick, B. Thompson, and Brown. And, I hope that answers your question, judge. I would like to provide clarity on anything else that I haven't already done. I will say local governments sued under 1983. The issue of genuine fact is whether or not the city of San Antonio had actual or constructive knowledge that was a moving force behind the constitutional violations alleged. And, we believe that they were. This child in this case resulted in massive injuries due to the use of excessive force. There was  intercranial injury due to loss of consciousness. There was a subsequent encounter with concussion without loss of consciousness and then due to excessive force. And, there was as a result of the use of excessive force. I hope that clarifies. Did I answer your question, judge? Okay. I mean, it's your time. I wasn't trying to derail you. That's it, your Honor. Okay. All right. Well, that concludes the argument of this case. A lot going on in the case. Counsel, get your questions addressed. We've read it, looked at it, we'll read it, look at it some more and pour it out. We appreciate the briefing and the oral argument to help us clarify the cases that have been admitted and engaged.